# HARRIS

*v.*

# THE UNITED STATES.

CRIMINAL LAW; INSTRUCTIONS TO JURY; INTOXICATION.

1. Where in a criminal case instructions fully stating the law upon the subject of reasonable doubt have been granted, it is not error for the court to refuse to grant on behalf of the defendant other instructions which are mere elaborations or variations of those granted.

2. Voluntary intoxication is in this District neither an excuse nor a palliation for crime.

3. Instructions not supported by the testimony are properly refused.

No. 532.   Submitted January 22, 1896.   Decided February 3, 1896.

HEARING on an appeal by a defendant indicted for and convicted of murder.   *Judgment affirmed.*

The COURT in its opinion stated the case as follows:

The appellant, John Harris, otherwise called Patsy Harris, was found guilty upon an indictment for murder, in the Supreme Court of the District of Columbia, and has brought his cause here upon exceptions taken to the rulings of the court below on the instructions asked at the trial and to portions of the charge given by the court to the jury. The record shows no exceptions based on the admission or exclusion of evidence; and there seems to have been but little, if any, conflict in the testimony with reference to the substantial facts in the case.

The homicide with which the appellant was charged was that of one Matthew Spruell, and occurred on July 4, 1895, in that part of the District of Columbia heretofore known as Georgetown. Both Spruell and Harris lived in a small house on Thirty-second street, in Georgetown, between the canal and Bridge street. The appellant rented the two upper

rooms of the house from Spruell, and occupied them with his wife and mother. The house had no hall, and the only access ·to these rooms was through the lower front room, which was occupied and used by Spruell as a barber shop. Spruell with his wife also occupied the back room in the rear of the shop.

About two o'clock of the afternoon of the day mentioned, the appellant, who seems to have been drinking, came into the barber shop of Spruell, made some remarks that indicated that he was in an ugly mood, among them some remarks to the effect that fire-crackers had been shot at his wife in the street, and then from a loaded pistol which he had in his hand fired a shot into the wall of the room, at the same time uttering a threat to the effect that he intended to do some mischief. Thereupon he went up stairs to his own rooms ; and while he was there, some one, presumably some member of his own family, seems to have obtained possession of his pistol and to have thrown it out of the window into the yard in the rear of the house. He came down stairs again, and demanded of Spruell where his pistol was. Spruell denied having it or having any knowledge of it. The appellant then advanced towards Spruell in a menacing attitude, and threatened to kill him. Spruell had been stropping a razor, but whether he had laid it down or not is not entirely clear from the testimony. He had it in his hands at all events, but closed, when the appellant approached him in the threatening manner mentioned, and he at the same time moved towards the appellant in a somewhat similar manner.

· At this juncture a woman, who lived next door to these parties, and who was in the shop at the time, came between them, and pushed the appellant out of the back door. The appellant seems then to have found his pistol in the yard of the house ; for he came out through the adjoining house to the street, flourishing the pistol in his hand. Looking in through the window of the . shop, he demanded to know where Spruell was. Spruell in the meantime had gone out

of his shop and gone up the street some distance. The appellant started in pursuit of him. When Spruell saw this, he commenced to run, and took refuge in the hall of an adjacent house. The appellant followed him into the house, fired three shots in quick succession at him, the last of which proved to be almost instantly fatal, at the same time using most opprobrious language to the deceased, and then started to run away; but he was arrested by a citizen, and his pistol, a revolver with five chambers, was taken from him. Such is the substance of the testimony, with some unimportant variation of detail.

At the trial of the appellant for the crime the homicide was proved by the prosecution beyond all possibility of doubt; and there was no pretence of denying it; and the circumstances shown by the prosecution was such as to indicate strongly a most atrocious case of deliberate, willful, and malicious homicide. There was very little or no substantial contrariety in the evidence; and the effort of the defence was mainly directed towards having the question of the appellant's supposed intoxication submitted to the special consideration of the jury in excuse or mitigation of his crime, and also towards the claim that he might have acted under an apprehension of bodily harm to himself from the deceased.

Only one exception was taken to testimony, and that is not insisted on here, or made a ground of assignment of error; and it is in itself unimportant. But in pursuance of the theory of defence that has been indicated, ten prayers for instructions were submitted on behalf of the defendant, of which only three were granted, which were to the effect that the jury should acquit the accused of the charge laid against him in the indictment, unless they were satisfied of his guilt beyond a reasonable doubt. Of the seven instructions which were refused, two are mere elaborations or variations of statement in this theory of reasonable doubt; one is based upon the idea that the homicide may have been committed in an affray under the heat of sudden passion; another upon the theory that the deceased had made an

assault upon the defendant, from which the latter was justified in assuming himself to be in danger of bodily harm, and the three remaining instructions upon the assumption that the defendant was under the influence of liquor, and that his supposed condition of intoxication should reduce his crime from the grade of murder to that of manslaughter.

One instruction requested by the prosecution was given ; and the court also charged the jury of its own motion. In this charge the question of the defendant's intoxication was ignored; but the law in regard to murder, manslaughter, and self-defence was broadly and fully stated. To certain portions of the charge, however, exception was taken on behalf of the defendant, as also to the granting of the instruction asked for by the prosecution and to the refusal of the seven instructions requested on behalf of the defendant, as before stated, and which were rejected; and the defendant having been found by the verdict of the jury guilty of the crime of murder, in accordance with the indictment, he has appealed to this court from the judgment of conviction.

*Messrs. Thompson & Frailey* for the appellant.

*Mr. Arthur A. Birney,* U. S. Attorney for the District of Columbia, and *Mr. John E. Laskey,* Assistant, for the United States.

Mr. Justice Morris delivered the opinion of the Court:

Based upon the exceptions noted, there are five several assignments of error.

1. The first of these is on the refusal of the first, third, and ninth instructions requested by the defendant; and amounts in substance to the statement that the court below refused to instruct the jury fully and precisely on the question of the strength of the evidence necessary to a conviction. These are the terms in which the purport of the assignment is stated in the brief filed on behalf of the appellant.

We do not think that the assignment is well founded. It would serve no good purpose to recite here in full the instructions of the refusal of which complaint is here made. It is sufficient to say that, in our opinion, as we have already said, two of these three instructions are mere elaborations or variations of the instructions that were granted upon the subject of reasonable doubt; and that, inasmuch as the instructions that were granted fully stated the law upon the subject, it would have been, not only useless and unnecessary, but even improper, to have granted the others, inasmuch as their only tendency would have been to confuse and therefore mislead the jury. It is too much the habit of counsel now to multiply instructions on the same point. The cause of justice is best subserved by reducing their number and simplifying their language.

The third of these three instructions refused, which was the ninth in order of the defendant's requests, was based upon the theory that the deceased had made an assault on the defendant, and that the latter was justified in assuming that the former intended to do him bodily harm, and acting under that belief shot the deceased. This instruction was not warranted by anything in the testimony. There was no evidence of any assault by the deceased on the defendant, from which the defendant would have been justified in entertaining the apprehension of bodily harm to himself. The testimony is solely and exclusively of assault by the defendant on the deceased. And even if there were any foundation for the theory that the deceased, when he was first attacked, advanced upon the defendant with an open razor with the intention to assault, it was too much to ask the jury to believe that this was a sufficient justification for the subsequent killing after the lapse of the time which evidently must have elapsed between this supposed assault and the actual homicide.

2. The second assignment of error is upon the refusal of the court below to give the instructions numbered six, seven, and ten, on behalf of the defendant. These instruc-

tions concerned the appellant's supposed intoxication at
the time of the homicide, a condition which depends for its
proof on the sole testimony of his mother, for none of the
other witnesses testify to anything of the kind, although
they say that he had been drinking, or had taken a drink.
The instructions were to the effect, that, if at the time of
the homicide, the defendant was so much intoxicated as to
be incapable of forming in his mind a design deliberately to
do the act, or if at that time his intoxication was such as to
show that there was no motive or intention on his part to
commit the crime of murder, or if at that time his condition
of intoxication was such as to intensify the excitement grow-
ing out of the assault upon him, if there was such an as-
sault, then his offence should be regarded as manslaughter,
not murder. It is contended very ably and very inge-
niously that the refusal to give these instructions practically
withdrew the question of the appellant's intoxication from
the jury, and that this question should have been sub-
mitted to them for their consideration.

But on the record the answer to this contention is plain ;
and it is twofold.    In the first place, the general charge of
the court and the instructions that were granted were amply
broad enough to entitle the jury to consider the question
of the appellant's intoxication as an element in the transac-
tion.    They were told that the burden of proof was on the
prosecution to prove the charge of murder beyond a reason-
able doubt ; that, in order to convict the defendant of the
crime of murder, it must appear that he had committed the
act of homicide feloniously, wilfully, and with malice afore-
thought ; and that, if there had been a quarrel, and there
was a reasonable doubt as to how it had been brought
about, and the defendant's passions were thereby aroused,
and there was a reasonable doubt whether sufficient cool-
ing time had elapsed for the defendant, they were even
then to consider whether all the circumstances of the case,
as shown by the evidence, were sufficient, beyond a reason-
able doubt, to show that the act had been done with delib-

eration. This was more favorable to the defendant than from the testimony he had any right to expect. For if the matter of intoxication is to be considered at all in this connection, it is only as affecting the question of intention and premeditation required to constitute the crime of murder. In fact, more is not claimed for it here by counsel for the appellant. The claim is, that the condition of intoxication negatives and excludes the idea of premeditation, and that without premeditation there can be no murder, but only manslaughter. Now, if this claim is justly founded either in law or in fact, the jury are at liberty to consider it when they are told that, in order to convict the defendant of the crime of murder, they must find from all the circumstances in the case shown by the testimony that there was premeditation on the part of the defendant to commit the act. If the testimony showed that the physical or mental condition of the defendant was such as to preclude the idea of premeditation on his part or of intention to commit crime, then undoubtedly he had in the charge the benefit of a statement of the law as favorable to him as he had any right to expect.

But, in the second place, we must hold it emphatically as the law of the District of Columbia, that voluntary intoxication is neither an excuse nor a palliation for crime. Voluntary intoxication is itself a crime, at least in morals, if not always in law. It is always at least a vice. And it would be subversive of all law and of all morality if the commission of one vice or crime could be permitted to operate as an excuse or palliation for another crime.

There has been too much refinement and false reasoning on this question. It is quite plausible to argue that because a condition of intoxication may so far impair the mental faculties as to preclude a person from the capability of acting with design or premeditation, therefore no person in that condition can justly be held guilty of a crime in which one of the constituent elements is premeditation. Intoxication is likened to insanity, and is characterized as a dis-

ease.   And it is in many cases most undoubtedly a disease, and all crime is insanity.   But it would be wholly absurd to argue from this that society may not punish crime at all, or that a resulting disease shall condone the vice that leads to it   The habit of intoxication may be a disease ; but voluntary intoxication is a vice, and if it leads to criminal action it is a crime.

In order that one should be held guilty of a crime, it is not always a necessity that intention should expressly appear in order that that specific crime should be committed. Intention is usually inferred from the act itself, and from circumstances.   But it may be inferred from other criminal conduct.   One who commits arson, intending only to commit that crime, may be held guilty of murder, if a homicide is the result of his act, although he may not have contemplated any such result.   One who wantonly or wickedly throws a missile in the public thoroughfare, is responsible civilly and criminally for resulting injury, although he may not have intended any such injury.   When the result of any specific course of conduct, such as indulgence in intoxicating liquors to excess, is notoriously such as easily and naturally to lead to the commission of crime, society can only be safe in rigidly holding the author of such conduct to accountability for its usual consequences.   These are elementary principles of law ; but they seem to be ignored in those judicial decisions and by those text writers who would reduce the grade of crime or relieve entirely from responsibility for it those who have committed it while in a state of voluntary intoxication.

We think the doctrine laid down by Mr. Justice STORY in the case of *United States* v. *Cornell*, 2 Mason, 99, is just as applicable now as when he stated it.   He says :

" If the prisoner was at the time of committing the offence, intoxicated, as his counsel has earnestly contended, I cannot perceive how it can, in point of law, help his case. This is the first time that I ever remember it to have been contended that the commission of one crime was an excuse

for another. Drunkenness is a gross vice, and in the contemplation of some of our laws is a crime; and I learned in my earliest studies that so far from its being in law an excuse for murder, it is rather an aggravation of its malignity. If it be fit that another rule of law should prevail, it will be for the legislature to prescribe it. It is my duty to administer the law upon settled principles; and I confess that I do not well know how a doctrine more dangerous to the peace and good order of society could be established than that the vices of men, as this voluntary madness is, should constitute an excuse for their crimes."

To this we may add what Chief Justice SHAW said in the case of *Commonwealth* v. *Hawkins*, 3 Gray, 463:

" The rule of law is, that, although the use of intoxicating liquors does to some extent blind the reason and exasperate the passions, yet, as a man voluntarily brings it upon himself, he cannot use it as an excuse or justification or extenuation of crime. A man, because he is intoxicated, is not deprived of any legal advantage or protection; but he cannot avail himself of his intoxication to exempt him from any legal responsibility which would attach to him if sober."

In the case of *The People* v. *Rogers*, 18 N. Y. 9, the Court of Appeals of the State of New York, by Mr. Justice DENIO, said:

" In the forum of conscience there is no doubt considerable difference between a murder deliberately planned and executed by a person of unclouded intellect, and the reckless taking of life by one infuriated by intoxication; but human laws are based upon considerations of policy; and look rather to the maintenance of personal security and social order, than to any accurate discrimination as to the moral qualities of individual conduct. But there is, in truth, no injustice in holding a person responsible for his acts committed in a state of voluntary intoxication. It is a duty which every one owes to his fellowmen and to society, to say nothing of more solemn obligations, to preserve, so

far as it lies in his own power, the inestimable gift of reason. If it is perverted or destroyed by fixed disease, though brought on by his own vices, the law holds him not accountable. But if by a voluntary act he temporarily casts off the restraints of reason and conscience, no wrong is done him if he is considered answerable for any injury which in that state he may do to others or to society."

And again, in the same case, the same court said:

"It is difficult to know precisely what was meant by the request to charge; but I think its sense may be expressed thus—that drunkenness might exist to such a degree that neither an intention to commit murder nor a motive for such an act could be imputed to the prisoner. It was, therefore, asked that it should be left to the jury to determine whether such a degree of intoxication had been shown, and that they should be instructed that if it had, the prisoner should be found guilty of manslaughter only. We must lay out of view, as inapplicable, the case of a person who had become insensible from intoxication, and who was performing an act unaccompanied by volition. There was nothing in the evidence to show that the prisoner's conduct was not entirely under the control of his will, or which would render it possible for the jury to find that he did not intend to stab the deceased with his knife. The mind and will were no doubt more or less perverted by intoxication; but there was no evidence tending to show that they were annihilated or suspended. Assuming, therefore, that the request did not refer to such a hypothesis, the only other possible meaning is, that it supposes that the jury might legally find that the prisoner was so much intoxicated that he could not be guilty of murder, for the want of the requisite intention and motive; and the request was that they might be so instructed. This would be precisely the same thing as advising that they might acquit of murder on account of the prisoner's intoxication, if they thought it sufficient in degree. It has been shown that this would be opposed to a well established principle of law. The judge was not at liberty so to charge."

In the later case of *Flanagan* v. *The People*, 86 N. Y. 554, in the same court, the doctrine of the case of *The People* v. *Rogers* was strongly reaffirmed.    There the court said :

" The effect of this proposition would be to excuse the prisoner from the consequences of the crime committed, if he was laboring under intoxication so that his will was overcome, and not under his control at the time ; in other words, that drunkenness, if carried to the extent of producing incapacity to control the action of the mind and will of the prisoner, would be an excuse for the crime committed. The rule is well settled that voluntary intoxication of one who, without provocation, commits a homicide, although amounting to a frenzy, does not exempt him from the same construction of his conduct and the same legal inferences, upon the question of intent, as affecting the grade of his crime, which are applicable to a person entirely sober."

Other citations to the same effect might be adduced to an indefinite extent ; but we do not see that it would serve any useful purpose to multiply authorities.    The principles here stated seem to us to be the dictate of reason and common sense, and to be inexorably demanded for the protection of society against lawlessness.    We prefer to follow them rather than the false sentimentality, as we regard it, of those judicial utterances which set a premium on vice by the condonation of crime resulting from reckless habit. And, of course, we cannot regard as applicable any decisions that are based on statutory enactments which provide for placing murder committed in a state of voluntary intoxication in a distinct and different category from murder committed with express malice.

We are of opinion, therefore, that the instructions which were requested on behalf of the defendant in this connection were properly refused.

3. The third assignment of error is based upon the refusal of the court below to give the eighth instruction requested on behalf of the defendant.    This instruction was as follows :

" If the jury believe from the evidence that the defendant

killed the deceased in an affray under sudden heat and passion, induced by adequate cause or sufficient provocation, and before there had been sufficient time for passion to cool, and not from premeditated and formed design, then the killing is not murder, but manslaughter, unless the testimony reduces it to self-defence."

The difficulty with this instruction is that there is absolutely no testimony whatever whereon to base it. There is not shown to have been any affray between the parties. The altercation, whatever there was of it, was wholly and exclusively provoked by the appellant. The evidence tends to show very positively that the deceased sought during the whole time to avoid the quarrel which the appellant was seeking to force upon him, and that the homicide was wanton, unprovoked, and most unjustifiable. It seems to us that an appellate tribunal has not often been called upon to review a case of homicide committed under circumstances of more malignant recklessness than this present case.

And what we have said in this regard will suffice to dispose of the fourth and fifth assignments of error, which have relation to the giving of the one instruction requested on behalf of the prosecution and to some portions of the general charge of the court. In these we find no error. These assignments, in fact, were not seriously insisted on by counsel in argument.

In the trial in the court below the appellant seems to have had the benefit of all the defence that could be made for him by able and earnest counsel, and the instructions given and the charge of the court were as favorable to him as he could expect—more favorable, probably, than he was entitled by the testimony to have ; and it is not apparent how, in view of that testimony, the jury could have rendered any other verdict than that which they did render. Notwithstanding the able and ingenious presentation made before us of the questions of law involved, we fail to find that there was any error committed by the trial court, and *the judgment of that court must therefore be affirmed. And it is so ordered.*