**James BARRETT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9377.**

District of Columbia Court of Appeals.

Argued Nov. 9, 1976.

Decided Aug. 24, 1977.

W. Anthony Fitch, Public Defender Service, Washington, D. C., for appellant. Frederick H. Weisberg, Public Defender Service, Washington, D. C., entered an appearance for appellant.

Frederick A. Douglas, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter A. Chapin, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and NEBEKER, Associate Judges.

PER CURIAM:

Appellant was convicted by a jury of murder in the second degree and arson[1] upon testimony that he had set fire to the

---

1. D.C.Code 1973, §§ 22–2403 and 22–401, respectively. The jury acquitted appellant of first-degree felony murder.

house of Mrs. Katurah Moore, causing the death of one of her children and the severe burning of another. Out of the jury's presence appellant proffered to the court the testimony of five witnesses bearing on the issue of appellant's alleged insanity at the time of the offense.[2]

Dr. Smith, an expert in medical toxicology, would have testified to the jury that in his opinion appellant was on the critical date, "suffering from a stimulant toxic psychosis which is a major break with reality, secondary to an intoxicant and that the major reason for this was the accumulative affect [sic] of a large number and variety of drugs . . .. This does not happen with a single dose ingestion, but occurred over a three to four day period . . . in which [appellant] had dosages of two different types of stimulants." (Record at 49.) But for the toxic psychosis, according to Dr. Smith (Record at 57), appellant would not have committed the offense.

Dr. Snyder, Professor of Pharmacology and Psychiatry, would have testified that "drug-induced toxic psychosis . . . is identical in terms of its effect on behavior to the more commonly known mental disorders, particularly schizophrenia . . . and it is very likely that the defendant was suffering from a drug-induced toxic psychosis at the time of this offense and that the offense resulted from the psychosis." (Proffer of Testimony 2.)

Mr. Fishbach, a clinical psychologist, would have testified that he administered psychological tests and conducted a clinical interview with the appellant. It was his opinion that appellant was "intellectually limited and emotionally withdrawn" and that appellant viewed himself as "small and inadequate" and "deficient in his ability to identify with others." (Proffer of Testimony 2–3).

Two lay witnesses would have testified that appellant had been abusing drugs "for a substantial period of time," had been "high on drugs" for several days prior to the arson, had ingested drugs, including cocaine, on the day in question, and had undergone a noticeable change in personality which was attributed to "excessive drug intake." (Proffer of Testimony 1–2.)

In addition to this proffer of evidence, appellant testified at trial before the jury that he had been taking various drugs, "mostly LSD," for five years. About a week prior to the offense appellant, a musician, sought employment in Boston with a rock band. When the band would not hire him because he "had been taking acid or L.S.D. for about two days" and "wasn't fit to play at that particular time" (Record at 256), appellant returned to Washington in a despondent mood. Then over a three or four day period before the arson, he ingested LSD, cocaine, and various kinds of barbiturates. (Record at 256–61.) On the day of the arson appellant drank whiskey, passed out and "found [himself] roaming around downtown." (Record at 260.)

■ The trial court refused to permit the proffered evidence to be heard by the jury (Record at 359, 364–65) and, with respect to appellant's own testimony, charged the jury that "voluntary taking of drugs is not [a defense] to the charges of arson . . . or is it a defense to the crime of second degree murder." (Record at 349.) Appellant vigorously argues that the trial court erred, contending that "consumption of drugs during the period of the offense . . . should not disqualify him from asserting the insanity defense." (Reply Brief at 17.) However, temporary insanity created by *voluntary* use of intoxicants[3]

---

**2.** Since the trial of this case, our jurisdiction has adopted a variation of the American Law Institute's standard for the insanity defense. *See Bethea v. United States*, D.C.App., 365 A.2d 64 (1976).

**3.** The same principles apply whether intoxication is produced by alcohol or drugs. *State v. Cooper*, 111 Ariz. 332, 334, 529 P.2d 231, 233

(1974); *State v. Hall*, Iowa, 214 N.W.2d 205, 207–08, 73 A.L.R.3d 85, 89 (1974); *Commonwealth v. Campbell*, 445 Pa. 488, 491, 284 A.2d 798, 801 (1971); W. LaFaye & A. Scott, *Handbook on Criminal Law* § 45, 341–42 (1972); 1 Wharton's Criminal Law and Procedure § 49 (R. Anderson ed. 1957). *See People v. Kelly*, 10 Cal.3d 565, 111 Cal.Rptr. 171, 516 P.2d 875 (1973); *State v. Maik*, 60 N.J. 203, 287 A.2d 715

will not relieve a defendant of criminal responsibility even if that mental condition would otherwise meet the applicable legal definition of insanity. *Parker v. State*, 7 Md.App. 167, 172–74, 254 A.2d 381, 386–88 (1969), *cert. denied*, 402 U.S. 984, 91 S.Ct. 1670, 29 L.Ed.2d 150 (1971), quoting 21 Am. Jur.2d *Criminal Law* § 44 (1965); 1 Wharton's Criminal Law and Procedure § 46 (R. Anderson ed. 1957). *See People v. Kelly*, 10 Cal.3d 565, 111 Cal.Rptr. 171, 516 P.2d 875 (1973); *State v. Maik*, 60 N.J. 203, 287 A.2d 715 (1972), *overruled on other grounds, State v. Krol*, 68 N.J. 236, 344 A.2d 289 (1975).[4]

■ Appellant argues that "he was not in an intoxicated state and that the drugs . . . he had been ingesting did not cause intoxication but rather exacerbated an *underlying mental disorder* into a psychosis." (Reply Brief at 15 n.8, emphasis added.) The difficulty with appellant's position, however, is that he failed to present in his proffer or testimony to the jury any evidence that prior to the offense he was suffering from "an underlying mental disorder." Appellant's proffer as to his mental condition prior to the offense was only that he was "intellectually limited and emotionally withdrawn."

Appellant's reliance on *Gaskins v. United States*, 133 U.S.App.D.C. 288, 410 F.2d 987 (1967); *Castle v. United States*, 120 U.S. App.D.C. 398, 347 F.2d 492 (1964), *cert. de-*

*nied*, 381 U.S. 929, 953, 85 S.Ct. 1568, 14 L.Ed.2d 687 (1965); *Rivers v. United States*, 117 U.S.App.D.C. 375, 330 F.2d 841 (1964), and *Horton v. United States*, 115 U.S.App. D.C. 184, 317 F.2d 595 (1963), is misplaced. Those cases, involving drug addicts, were concerned with whether the evidence of mental illness was sufficient to raise the issue of the defendant's sanity at the time of the offense. Here, the proffer, which did not include evidence of drug addiction, appears sufficient to raise the sanity issue for determination by the trier of fact; the critical question, however, is the *availability* of the insanity defense given the evidence of his *voluntary* taking of drugs which produced the "toxic psychosis."

The trial judge, under the particular circumstances reflected in this record, did not err (1) in refusing to admit the proffered evidence that appellant's voluntary ingestion of drugs induced a toxic psychosis on the date of the offense, and (2) in instructing the jury as he did.

*Affirmed.*

---

(1972), *overruled on other grounds, State v. Krol*, 68 N.J. 236, 344 A.2d 289 (1975).

**4.** In *dicta* this court has recognized that *voluntary* ingestion of alcohol producing "permanent mental disease amounting to insanity may relieve an accused of responsibility," *Easter v. District of Columbia*, 209 A.2d 625, 627 (1965), *rev'd* 124 U.S.App.D.C. 33, 361 F.2d 50 (1966); and the court of appeals some 75 years ago noted with approval the proposition that "[i]f it [a person's reason] is perverted or destroyed by fixed disease, *though brought on by his own vices,* the law holds him not accountable," *Harris v. United States*, 8 App.D.C. 20, 29 (1896) (emphasis added). The experts proffered by appellant opined, however, that the toxic psychosis produced by LSD and cocaine "are generally temporary and will disappear if drug use is discontinued." (Record at 107–08.) And while Dr. Smith would have testified that

"heavy use of drugs" could occur and "the person never ever really recovers full functioning" and "long after the drug episode is over . . . they still have residual psychological impairments" (Record at 75), appellant concedes (Reply Brief at 13) that "there is nothing in the record to indicate how long . . . [his] insanity continued beyond the ingestion of the [psychosis-inducing] drugs" and that the "record simply does not indicate" whether the drugs left appellant with a mental condition "more severe than the one he had before." *Compare People v. Kelly*, 10 Cal.3d at 568, 111 Cal.Rptr. at 174, 516 P.2d at 878 n. 9 (1973). Thus, even if this court's comment in *Easter* is viable, the record does not show and appellant has not contended that his insanity, produced by the *voluntary* ingestion of narcotics, was "permanent" or "fixed."