Ollie R. CARTER, a/k/a Randy
O'Malley, Appellant,

v.

UNITED STATES, Appellee.

No. 85–710.

District of Columbia Court of Appeals.

Argued Sept. 16, 1986.
Decided Aug. 31, 1987.

Richard K. Gilbert, Washington, D.C., appointed by this court, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Joseph E. di Genova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Roxane N. Sokolove, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

After a jury trial, appellant was convicted of unauthorized use of a vehicle, assault on a police officer with a dangerous weapon (an automobile), and five counts of malicious destruction of property (five automobiles).[1] On appeal he contends that the trial court erred in refusing to instruct the jury on the defense of accident, in not permitting him to offer evidence of intoxication in support of that defense, in defining the element of malice while instructing on the offense of malicious destruction of property, and in refusing to give an instruction on intoxication as a defense to the latter charge. We reject all of appellant's arguments. Accepting a concession by the government (see part IV, *infra*), we vacate two of appellant's five convictions of malicious destruction of property. In all other respects we affirm the judgment of conviction.

I

Shortly after 11:00 p.m. on August 25, 1984, Swindell Barber parked his automobile, a 1972 Lincoln, in a parking lot on Massachusetts Avenue, N.W. Leaving the car unlocked, he walked to the nearby Government Printing Office, where he worked on the night shift. Mr. Barber had adjusted the ignition so that he could start the car without a key; however, he had given no one permission to use his car, and even his friends did not know how to start it.

At about 4.30 a.m. on August 26, Officer Paul McLeod of the United States Capitol Police saw appellant driving Mr. Barber's car erratically along Massachusetts Avenue, N.E., about two blocks east of the parking lot where Mr. Barber had left it. Appellant made several U-turns, then headed toward the semi-circular plaza in front of Union Station. After making six or seven full circles in the middle of the plaza,

---

1. D.C.Code §§ 22–3815 (1986 Supp.), 22–505(b), and 22–403 (1981), respectively. Appellant was acquitted of first-degree theft and receiving sto- len property, with which he was also charged in the indictment.

he turned down First Street, N.E., in the direction of the Capitol. Another officer, Darryl Fravel, saw the car go through two red lights at about thirty miles per hour (the speed limit is twenty-five) before turning right on C Street, N.E.

At the north entrance to the Capitol Plaza is a barricade, where entering vehicles must stop and be identified before proceeding onto the Capitol grounds. Officer James Burns, on duty in a small booth at that entrance, saw appellant run a red light at Delaware and Constitution Avenues, N.E., about a block away.[2] Appellant was headed south toward the Capitol Plaza at about thirty miles per hour. Officer Burns, in full uniform and wearing a bright orange reflective vest, stood next to a stop sign and signaled appellant with a flashlight to stop. But he did not stop; instead, he veered toward Officer Burns so that Burns had to move quickly out of the way to avoid being hit.

Appellant then continued across the plaza, ignoring the efforts of Officer Littleton Wallace to wave him to a stop. He speeded up and then turned left into a group of parked cars belonging to several police officers. He smashed into a car owned by Officer Jeffrey Wilson, which in turn was shoved into another car owned by Officer Tanya Blake. Then he turned in a different direction and struck a stop sign, dragging it across the front of a parked car belonging to Officer Edward Wilson. The entire front of this car—"lights, grill, hood, and everything," according to Wilson's testimony—was severely damaged. Finally, appellant turned into Northeast Drive,

which led out of the plaza toward First Street, N.E. There he collided head-on with a police cruiser driven by Sergeant John Mattingly, who had just entered Northeast Drive from the other end with his siren blaring and his red light flashing. Mattingly suffered neck and back injuries and was taken by ambulance to a hospital; the cruiser suffered damage in the amount of $1,165.90.[3]

Appellant was quickly removed from Mr. Barber's car and placed under arrest. The officers testified that appellant was incoherent and belligerent; however, they did not smell alcohol on his breath or in the car. Because of injuries he had sustained in the collision, appellant was transferred by ambulance to District of Columbia General Hospital, where blood and urine samples were taken from him about two hours later. No evidence of alcohol or drugs was found in these samples.[4]

A critical issue at trial was appellant's mental state at the time of these events. In an attempt to prove that he was intoxicated, appellant testified that he had no recollection of his trip from his home in North Carolina to the District of Columbia, nor did he recall any of the events on the Capitol grounds.[5] The government, on the other hand, asserted that appellant was not intoxicated and that his actions were therefore knowing and intentional. The jury found appellant guilty of unauthorized use of a vehicle, assault on a police officer (Burns) with a dangerous weapon (the automobile), and five counts of malicious destruction of property (the five automobiles, including that of Mr. Barber).

2. This intersection is one block west and one block south of First and C Streets, N.E., where Officer Fravel had last seen the car.

3. Mr. Barber testified that his car was a total loss. The damage to the other cars ranged from a low of $641.75 to a high of $1,556.00.

4. The chief toxicologist from the District of Columbia Medical Examiner's office testified, on the basis of the test results, that in his opinion appellant had not been intoxicated two hours earlier. Officer David Johnson told the jury, however, that he recovered a grocery bag containing seventeen unopened 6.8-ounce bottles of rum from the rear floor of the car. Mr. Barber

testified that these bottles were not in the car when he parked it. Officer Johnson also found a cap to a liquor bottle on the front floorboard, but it did not match any of the bottles of rum. Johnson never found the bottle that the cap came from.

5. A psychiatrist testified about the phenomenon of alcoholic blackout and the way in which it can cause some persons to have no memory of things that happen while they are intoxicated. Other defense witnesses recounted appellant's history of alcohol-related binges and resulting amnesia, and appellant himself testified that over the past four years he had experienced increasingly frequent periods of memory loss.

Appellant contends on appeal that the trial court erred in failing to instruct the jury on the defense of accident as it related to the charge of assault on a police officer, and that the court should not have prohibited him from introducing evidence of his intoxication to prove that defense. In addition, appellant maintains that the trial court improperly instructed the jury on the definition of malice, an element of the crime of malicious destruction of property. He also argues that the court, when it gave additional instructions in response to a question from the jury, erred in refusing to tell the jury that intoxication might negate malice and thereby provide a complete defense to the malicious destruction charge.

## II

Appellant was charged with assault on a police officer because, when he was driving Mr. Barber's car, he veered towards Officer Burns, causing Burns to jump out of the way to avoid being run over. Defense counsel argued to the trial court that an accident instruction was appropriate for the limited purpose of proving that the assault was unintentional, caused by a loss of motor control, perception, and judgment due to appellant's intoxication.[6] The court declined to give the requested instruction, ruling that accident was not a valid defense to the general-intent crime of assault on a police officer, inasmuch as it was based on a claim of intoxication. Earlier the court had granted the government's motion *in*

*limine* to exclude evidence that appellant had been intoxicated insofar as it related to the assault charge. We affirm both rulings.

A defendant in a criminal case is entitled to a jury instruction on any issue fairly raised by the evidence, *Smith v. United States*, 309 A.2d 58, 59 (D.C.1973); *Womack v. United States*, 119 U.S.App. D.C. 40, 336 F.2d 959 (1964), "however weak" that evidence may be. *Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967); *see Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 842–43, 40 L.Ed. 980 (1896) (defendant entitled to an instruction if there is "any evidence fairly tending to bear upon the issue"). The trial court, however, may properly decline to give a requested instruction when there is no factual or legal basis for it. *Taylor v. United States*, 380 A.2d 989, 994–995 (D.C.1977); *Rhodes v. United States*, 354 A.2d 863, 864 (D.C. 1976). Applying these basic principles, we hold that the court in this case was entirely correct in refusing to instruct the jury on the defense of accident.

Appellant raised the issue of accident as a defense to the assault charge for the first time when he requested the accident instruction. The trial judge could reasonably conclude that there was not a sufficient evidentiary foundation to support an accident defense.[7] As the government points out, the only evidence concerning the circumstances of appellant's apparent

---

**6.** Counsel asked the court to give the standard instruction on accident, which states in pertinent part:

> An accidental touching of the person of another does not constitute an assault. If you have a reasonable doubt whether or not the defendant intended to assault the complainant, you must find him not guilty.
>
> \*    \*    \*    \*    \*    \*
>
> If a person commits a wanton, reckless, and dangerous act that may result in injury to any one of a number of persons, such as shooting into a crowd, he may be found guilty of assault even though he had no specific intent to injure any particular person.

Criminal Jury Instructions for the District of Columbia, No. 4.16(B) (3d ed. 1978).

**7.** The propriety of an accident instruction "has given courts throughout the United States no

end of difficulty, and the law as a whole in this country is in irreconcilable conflict.... The distinct trend appears to be in the direction of extremely restricted use of this instruction, if not outright disapproval." *Graham v. Rolandson*, 150 Mont. 270, 287, 435 P.2d 263, 272 (1967) (citation omitted). Most accident instructions are given in civil actions for negligence when the defendant asserts that the event at issue resulted from a cause other than the defendant's failure to exercise due care. *See generally* Annot., 65 A.L.R.2d 20 (1959). "It is only where there is a reasonable theory of the evidence under which the parties involved may be held to have exercised due care notwithstanding that the accident occurred, that an unavoidable accident instruction is proper." *Bickley v. Farmer*, 215 Va. 484, 488, 211 S.E.2d 66, 70 (1975).

attempt to run down Officer Burns with a speeding automobile came from the government's witnesses. That evidence showed that appellant failed to stop at the stop sign, or even slow down, as he drove onto the Capitol Plaza, and that he veered toward Officer Burns in such a manner as to require the officer to jump out of the way to keep from being hit. Although Officer Burns testified that appellant seemed to be driving in an "erratic and confused" manner, there was nothing in his testimony to suggest that appellant was unable to control the car or that he was trying to avoid hitting the officer. Appellant's testimony was simply that he could not remember the incident at all; he offered no evidence whatever to suggest that what appeared to be an assault was really an accident—*i.e.,* that despite his exercise of due care, the assault unavoidably occurred.[8] All the evidence showed that appellant's conduct was "wanton, reckless, and dangerous";[9] none showed that it was accidental.[10]

■■■ The real issue, of course, is not whether the proposed instruction should have been given, but whether the trial

court erred in refusing to allow appellant to offer evidence of his intoxication, which might have supported his claim of accident. The court, in refusing to give the instruction, recognized that the purported defense of accident was merely a claim of intoxication in disguise; appellant was attempting to bring in through the back door a defense to which the front door had already been barred. The trial court had previously ruled that assault on a police officer was a general-intent crime, to which voluntary intoxication[11] was not a valid defense.[12] That ruling, of course, was correct, as appellant concedes in his brief. *See Pino v. United States,* 125 U.S.App. D.C. 225, 226 n. 1, 370 F.2d 247, 248 n. 1 (1966) (assault on a police officer is a general-intent crime), *cert. denied,* 387 U.S. 922 (1967); *Parker v. United States,* 123 U.S.App.D.C. 343, 345–347 & n. 5, 359 F.2d 1009, 1011–1013 & n. 5 (1966) (intoxication is not a defense to a general-intent crime; it is material only to negate a specific intent).[13] Appellant argues nevertheless that evidence of intoxication should have been allowed in this case because his veering toward Officer Burns "could have been the

8. *Johnson v. United States,* 386 A.2d 710 (D.C. 1978), on which appellant relies, is distinguishable because in *Johnson* there was evidence to support the giving of an accident instruction.

9. Criminal Jury Instructions, No. 4.16(B), *supra* note 6.

10. Defense counsel was permitted to argue to the jury that appellant's acts could have been accidental. In these circumstances, even if appellant had been entitled to an accident instruction, the court's failure to give one would not necessarily have been reversible error. *See Weber v. Eaton,* 82 U.S.App.D.C. 66, 68, 160 F.2d 577, 579 (1947).

11. When we refer in this opinion to intoxication as a defense, we are speaking only of voluntary intoxication. Appellant makes no claim, nor is there any evidence in the record, that he was involuntarily intoxicated or that anyone forced him to consume alcohol or any other drug.

12. To convict a defendant of assault on a police officer with a dangerous weapon, the government must prove (1) the elements of simple assault, *see Robinson v. United States,* 506 A.2d 572, 574–575 (D.C.1986); (2) the use of a dangerous weapon by the defendant in the commission of the assault, *Sousa v. United States,* 400 A.2d 1036, 1044, *cert. denied,* 444 U.S. 981, 100

S.Ct. 484, 62 L.Ed.2d 408 (1979); and (3) that the defendant knew or should have known that the victim was a police officer. *Petway v. United States,* 420 A.2d 1211, 1213 (D.C.1980); *Fletcher v. United States,* 335 A.2d 248, 251 (D.C. 1975). With respect to items 1 and 2, intoxication is no defense because specific intent is not an element of the crime. *Sousa v. United States, supra,* 400 A.2d at 1044. With respect to item 3, we agree with the Supreme Court of Colorado that public policy forbids reliance on a defense of intoxication:

> [W]hen a defendant chooses to knowingly introduce intoxicants into his body to the point of becoming temporarily impaired in his powers of perception, judgment and control, the policy enunciated in [*People v. Del Guidice,* 199 Colo. 41, 606 P.2d 840 (1979)] prohibits him from utilizing his intoxication as a defense to crimes requiring the *mens rea* of "knowingly," "willfully," "recklessly" or "with criminal negligence."

*Hendershott v. People,* 653 P.2d 385, 396 (Colo. 1982), *cert. denied,* 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983).

13. All of the crimes of which appellant was convicted were general-intent crimes. He was acquitted of two other offenses requiring proof of specific intent; see note 1, *supra.*

result of poor perception and motor control, exacerbated by intoxication," so that he should have been permitted to show that his intoxication impaired his ability to control the automobile and to observe things around him. We are not persuaded.

■ The issue presented here was also raised in *United States v. Yazzie,* 660 F.2d 422 (10th Cir.1981), *cert. denied,* 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 464 (1982). The defendant in *Yazzie* was charged with voluntary manslaughter. Although both parties and the court agreed that intoxication as such was not a defense to that charge, the defendant sought to introduce evidence of intoxication to support his other defense theories of self-defense and accident, arguing that his perception of imminent danger and his physical control were affected by his consumption of alcohol. The Court of Appeals rejected the argument "that while intoxication is not by itself a defense to voluntary manslaughter, it is nevertheless effective as an adjunct to other defenses such as self-defense and accident...."

> The logic of the rule that intoxication is not a defense to a crime not involving specific intent dictates that it should not be available as a partial defense, effective in conjunction with others.... In sum, we hold that intoxication is no defense at all to a charge of voluntary manslaughter, regardless of the manner of its attempted use.

*Id.* at 431. We agree with *Yazzie* and adopt its rationale. Applying it to this case, we hold that the trial court committed no error in excluding evidence of appellant's alleged intoxication as an "adjunct" to appellant's defense of accident.

### III

During its deliberations the jury sent four notes to the court requesting addition-

al instructions, which the court gave. Appellant contests the accuracy and completeness of those instructions as they related to the charges of malicious destruction of property.[14] We find no error.

### A. *The definition of malice*

In responding to the second note requesting reinstruction on the elements of malicious destruction of property, the court reread the standard instruction which it had given earlier, including the following language:

> An act is done maliciously where it is done on purpose, without adequate provocation, justification, or excuse, and has as its foreseeable consequence damage to or destruction of the property. Malice may be inferred from intentional wrongdoing accompanied by a bad or evil purpose. It is not necessary that the defendant have intended any actual harm which you may find to have resulted from the acts with which he is charged; it is only necessary that you find that he acted with a conscious disregard of a known and substantial risk of harm which the law intended to prevent.

Criminal Jury Instructions for the District of Columbia, No. 4.43 (3d ed. 1978). A few moments later, in response to the question in the third note about whether appellant's attempts to evade the police officer were relevant to the issue of malice, the court gave the following instruction which had been submitted by the prosecutor, over the objection of defense counsel:

> Malice does not necessarily imply ill will, spite, hatred, or hostility by the defendant toward the property destroyed or the persons in possession of that property. Malice is a state of mind that prompts a person to do willfully, that is, on purpose, without adequate provocation, justification or excuse, a wrongful

---

**14.** The first of the jury's notes sought further instructions on the meaning of general intent and specific intent and the manner in which these intents related to each of the charges. In the second note, the jury requested clarification of the elements of malicious destruction of property and the distinction between that offense and mere negligence. The third note asked whether a finding that appellant was trying to evade the police officer was relevant to the issue of malice in the destruction of property counts, and also requested reinstruction on the defense of intoxication as it related to all of the charges. The fourth note related only to the assault and receiving stolen property charges.

act whose foreseeable consequence is the injury to or destruction of property.

In determining whether a wrongful act is done with malice, *you may infer that a person ordinarily intends the natural and probable consequences of acts knowingly done and knowingly omitted.* However, you should consider all of the circumstances and evidence that you deem relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the required malice. [Emphasis added.]

Appellant challenges both of these instructions, particularly the italicized language in the second one, which comes from another standard instruction dealing with proof of intent.[15] We agree that the instructions were not paragons of clarity (which was really not the trial judge's fault, given some fuzziness in the case law), and we think the second one probably should not have been given because it tended to confuse malice with intent, a related but separate concept. Nevertheless, considering the instructions as a whole, we find no reversible error.

■ Appellant asserts that the first instruction is inherently confusing because it defines malice in two different ways, one requiring proof of "intentional wrongdoing" with a "bad or evil purpose," and the other requiring only a "conscious disregard of a known and substantial risk." The nub of his argument seems to be his assertion in his reply brief that "[t]he first state of mind involves an intent to injure or destroy the property." This is simply incorrect. Appellant acknowledges that his interpretation of the language in the instruction "would appear to involve a specific intent." The case law makes clear, however, that

malice is not synonymous with, and does not require, a specific intent to injure or destroy the property.

The basically awkward terms such as a "wicked heart" or a "bad or evil purpose" should not be overemphasized; a finding that the accused intended the actual harm which resulted from his wrongful act is not an essential prerequisite to the existence of malice. All that is required is a conscious disregard of a known and substantial risk of the harm which the statute is intended to prevent.

*Charles v. United States,* 371 A.2d 404, 411 (D.C.1977) (citation omitted). Although malice may be inferred from intentional wrongdoing, *Paige v. United States,* 183 A.2d 759 (D.C.1962), the only intent required to be proven is the intent to do the act which results in the injury—in other words, a general intent.[16] Thus we disagree with appellant's view that the instruction gives two different definitions of malice, and we reject, as inconsistent with *Charles,* the proposed instruction which he proffers in his reply brief.[17]

■ Appellant's challenge to the second instruction must likewise fail. He maintains that it "permitted the government a double inference, inasmuch as it talked about intent inferred from a knowing act, without explaining that the further act of inferring malice from an intentional act requires additional proof that the act was done with a 'bad or evil purpose.'" The flaw in this argument is that the second inference of which appellant speaks is not required, either by the instruction or by the case law. The only inference the jury had to draw was that appellant acted "with a conscious disregard of a known and substantial risk of the harm which the statute

---

15. Criminal Jury Instructions, *supra,* No. 3.02.

16. There is language in *Nichols v. United States,* 343 A.2d 336, 341 (D.C.1975), which suggests that malice denotes an "intent to injure or break or destroy the property...." Read in context, however, this language refers only to conduct which is not negligent or accidental but knowing and intentional—in other words, an act committed with a general intent to do the act. The law, we believe, is correctly stated in the excerpt from *Charles* which we have quoted.

17. Appellant proposes that juries be instructed that they must find "either (1) an intention to injure or destroy the property or some other bad or evil purpose, or (2) a conscious disregard for a known and substantial risk of harm which the law intended to prevent." Alternative (1) would require a finding of specific intent, which is not an element of malicious destruction of property. *Charles v. United States, supra.*

is intended to prevent." *Charles, supra,* 371 A.2d at 411 (citation omitted). Thus there was no impermissible inference-on-an-inference, and the instruction was not improper.

Nevertheless, appellant's challenge is not entirely without substance. We think the second instruction was unwisely given because it blurred the line between malice and intent, a line that is not very clear to begin with. In other circumstances we might well conclude that the prosecutor led the court into error by proffering this instruction and persuading the court to give it. Viewing the instructions as a whole, however, "without selecting and comparing separate phrases for literal content," *Carter v. United States,* 475 A.2d 1118, 1124 (D.C.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985), we are satisfied that the jury was made aware of the difference between malice and intent and of what it needed to find in order to return a guilty verdict. We find no reversible error.

### B. *Intoxication and malice*

■ Appellant also argues that the trial court erred in refusing to reinstruct the jury that intoxication may negate the malice element of the offense of malicious destruction of property. The court had previously ruled—correctly—that malicious destruction of property was not a specific-intent crime. Nevertheless, in its original instructions, the court told the jury that intoxication could be a defense to that charge if the evidence were strong enough:

> With regard to destruction of property —that's five counts—if you find that the defendant was intoxicated at the time of the commission of the offense, that condition may negative the existence of the state of mind that is an essential element of the offense of malicious destruction of property. You may consider evidence of intoxication, if you find such evidence, in determining whether or not the government has proven beyond a reasonable

doubt that the defendant acted with malice, as I earlier defined it for you.

In its third note to the court, the jury requested reinstruction on intoxication and how it related to all the offenses. Defense counsel objected when the court did not reinstruct the jury on intoxication and its relation to malice. The court replied, "I am not going to give any more right now. I will let them come back if they need anything further." Appellant now argues that this failure to reinstruct the jury constituted reversible error. We hold, to the contrary, that the original instruction was erroneously given, but that since the error was in appellant's favor, he has no cause for complaint.

Appellant agrees that in murder cases intoxication may not negate the malice element of second-degree murder, thereby reducing the crime to manslaughter. *See McAffee v. United States,* 72 App.D.C. 60, 111 F.2d 199, *cert. denied,* 310 U.S. 643, 60 S.Ct. 1094, 84 L.Ed. 1410 (1940); *Bishop v. United States,* 71 App.D.C. 132, 136, 107 F.2d 297, 301 (1939). He asserts, however, that the malice involved in malicious destruction of property is somehow different from the malice which must be proven in murder cases, and that different definitions of malice should be adopted for the purpose of deciding the availability of an intoxication defense. He suggests that malice inhabits a limbo somewhere between "mere general intent" and specific intent, so that the *mens rea* required to establish malice can be negated by evidence of intoxication.

We agree with the government that *Barrett v. United States,* 377 A.2d 62 (D.C. 1977), is dispositive of this issue. In *Barrett* this court held that intoxication resulting from the voluntary use of drugs or alcohol was not a defense to a charge of arson.[18] Since arson and malicious destruction of property both require proof of the mental state known as malice,[19] and since the malice involved in both offenses is the same, *see Charles v. United States, supra,* 371 A.2d at 411 n. 12, we hold that *Barrett*

---

18. D.C.Code § 22–401 (1981).

19. Arson is "the malicious burning by the defendant of a building belonging to another."

*Chaconas v. United States,* 326 A.2d 792, 797 (D.C.1974).

applies to the instant case as well, and that intoxication is therefore not a defense to a charge of malicious destruction of property.[20]

## IV

 The government concedes that two of the destruction of property convictions should be vacated, since the evidence established that only three collisions caused damage to five cars. Specifically, the government states, and we agree, that the conviction of destroying Officer Blake's car (count J of the indictment) merges with the conviction of destroying Officer Jeffrey Wilson's car (count I), and that the conviction of destroying Mr. Barber's car (count N) merges with the conviction of destroying the police cruiser (count M). *See Ladner v. United States*, 358 U.S. 169 (1958) (firing shotgun only once at two officers constitutes a single offense, even though both officers were wounded); *Briscoe v. United States*, 528 A.2d 1243 (D.C.1987) (possession of marijuana in the kitchen and marijuana in the bedroom of the same apartment constitutes only one offense); *Thorne v. United States*, 471 A.2d 247 (D.C.1983) (two burglary convictions arising from a single entry of a building merge into one offense); *Cormier v. United States*, 137 A.2d 212, 216–217 (D.C.1957) (simultaneous carrying of two pistols constitutes only one offense); *United States v. Lewis*, 140 U.S.App.D.C. 345, 347–348, 435 F.2d 417, 419–420 (1970) (firing pistol once "in the direction of" two police officers, neither of whom was wounded, constitutes only one offense).

Ordinarily, we would vacate all the convictions and remand the case to the trial court for resentencing, as we did in *Thorne, supra,* and again in *Malloy v. United States*, 483 A.2d 678, 681 (D.C. 1984); *see also United States v. Knight*, 166 U.S.App.D.C. 21, 30, 509 F.2d 354, 363

(1974). We have adopted that procedure in order to avoid frustrating the sentencing scheme devised by the trial court. In this case, however, because the trial court placed appellant on probation on all seven counts, there is no likelihood that vacating two of appellant's seven convictions "would upset an interdependent sentencing structure." *Thorne, supra,* 471 A.2d at 249 (citations omitted). We therefore vacate the convictions and sentences on counts J and N, leaving the other convictions undisturbed.

*Affirmed in part and vacated in part.*

---

20. Appellant's reliance on *Terry v. State*, 465 N.E.2d 1085 (Ind.1984), for the proposition that "any factor, including intoxication, 'which serves as a denial of the existence of *mens rea*' must be considered by the jury," is misplaced. As the government correctly points out, Indiana law is different from that of the District of Columbia. "A defendant in Indiana can offer a defense of voluntary intoxication to *any* crime." *Id.* at 1088 (emphasis added). In the District of Columbia, however, intoxication is a defense only to crimes involving specific intent. *Parker v. United States, supra.*