

**In re R. F. H.**

**No. 9047.**

District of Columbia Court of Appeals.

Argued July 9, 1975.

Decided April 1, 1976.

Nancy K. Glassman, law student counsel, with whom Wallace J. Mlyniec, appointed by this court, was on the brief for appellant. Peter P. Broderick, Washington, D. C., also entered an appearance for appellant.

Dennis McDaniel, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel at the time the brief was filed,

Louis P. Robbins, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER and HARRIS, Associate Judges.

KERN, Associate Judge:

Appellant, a juvenile, was charged in a petition filed in the Family Division of the Superior Court on July 31, 1974, with having "unlawfully tampered with a motor vehicle without permission of the owner," a violation of Art. 25, § 15 of the District of Columbia Police Regulations.[1] At a fact-finding hearing on the petition, after the court denied appellant's motion to dismiss on the ground that his due process rights had been violated, the following evidence was presented. Mr. Soloman Chandler parked his 1965 Mustang near 3rd and M Streets in Northeast Washington at about 11:00 p. m. on July 28, 1974. The next morning Mr. Chandler's car had a broken lock on the driver's side and a burned-out ignition. Mr. Chandler had not given anyone permission to enter or use his car during that time.

At 3:15 a. m. on July 29, 1974, two police officers saw appellant in the passenger's seat and another person in the driver's seat of Mr. Chandler's car. One officer testified that the occupants appeared to be looking under the dashboard of the car. After circling the block once and finding the occupants still in the car and looking under the dashboard, the first officer approached the car. At that point both appellant and the other person left the car and ran, and the officer noticed smoke in the car and wires dangling from the dashboard. Both officers gave chase and appellant was apprehended.

Appellant's testimony was that he entered Mr. Chandler's car at the request of the person in the driver's seat, who wanted directions to an ice house. Appellant thought the car belonged to this person and that he was trying to hot-wire it to start it after it did not start with a key. When appellant saw this person leave the car and run he also left the car and started to walk away, but was stopped by the second officer. Based on the above information the trial judge found appellant guilty of violating Art. 25, § 15 of the Police Regulations.

■ Appellant urges this court to reverse the conviction on the ground that the regulation[2] is vague, does not provide adequate notice of what conduct is prohibited, and therefore violates due process.[3] The Supreme Court has recently enunciated that "[i]t is well established that vague-

---

1. Art. 25, § 15 provides:
   It shall be unlawful for any person except members of the police and fire departments in connection with the performance of their official duties to tamper with or move a parked vehicle of any other person unless such person has the permission of the owner or operator of such vehicle. Any person violating this section shall, upon conviction, be fined not more than $300 or imprisoned for not more than 10 days, or both.

2. Regulations generally are construed by the same rules of statutory construction as are statutes. See Siegman v. District of Columbia, D.C.Mun.App., 48 A.2d 764, 766 (1946).

3. The government claims that appellant has no standing to challenge the regulation in this manner since his conduct clearly falls within its prohibitive scope. Because appellant is threatened with a direct legal injury resulting from prosecution under the regulation he has satisfied the traditional legal requisites of standing. See Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); cf. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943); Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The manner in which appellant may challenge a statute or regulation should not be characterized as an issue of standing, but rather will be addressed in our review of the merits of appellant's claim of vagueness.

ness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L. Ed.2d 706, (1975). The Court has recognized, however, that a statute which "proscribed no comprehensible course of conduct at all . . . may not constitutionally be applied to any set of facts." *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

■ Appellant here argues that the regulation's proscription of tampering with another's vehicle is without standards guiding its application and does not define what conduct is prohibited and what is permitted. Specifically, appellant claims that he was not given notice of what conduct was forbidden,[4] and that the government has no guidelines or standards as to what conduct is criminal,[5] since there is no "objective definition" of tampering. Appellant's position, then, is that the regulation may not constitutionally be applied to *any* set of facts because it proscribes *no* comprehensible course of conduct at all. We disagree, for we find that the common meaning of

the term tampering, the legislative history of the regulation, and the judicial gloss added to this and other similar statutes combine to provide an adequate definition of tampering.

The regulation at issue initially was a part of the Motor Vehicle Regulations for the District of Columbia, but when the section containing this provision was amended in 1949 the tampering portion was omitted since it was considered more appropriate for inclusion in the Police Regulations. However, this was not effected and the Corporation Counsel wrote on June 16, 1950, that "the Police Department has accordingly, since September 1, 1949, been unable to arrest persons who attempt to break into parked automobiles for the purpose of stealing the automobiles or their contents." Letter from Vernon E. West, Corporation Counsel of the District of Columbia, to the Board of Commissioners of the District of Columbia, June 16, 1950. In order to close this gap, the Corporation Counsel recommended that the present regulation be incorporated in the Police Regulations, which was done. This response shows that the statute was intended to pre-

---

4. As the Supreme Court stated in *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) :

> [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

The Court has also declared that "[n]o one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). But recall Justices Holmes' famous remark that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or imprisonment . . . he may incur the penalty of death." *Nash v. United States,* 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913).

5. *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 168, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) ; *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

A criminal statute in particular must meet high standards of notice and certainty, and must be "sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation." *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952).

The Court of Appeals for the District of Columbia Circuit has set forth three requirements of a penal statute: (1) that it provide a "reasonable degree of certainty," (2) that it give "fair notice to those of ordinary intelligence," and (3) that it convey "sufficiently definite warnings as to proscribed conduct when measured by common understanding and practices." *Ricks v. District of Columbia,* 134 U.S.App.D.C. 201, 205–06, 414 F.2d 1097, 1101–02 (1968).

vent, among other things, interference with a vehicle in an attempt to break into it for the purpose of stealing the automobile or its contents.

Turning to the objective meaning of the regulation, we note that Black's Law Dictionary defines tamper as "[t]o meddle so as to alter a thing, especially to make corrupting or perverting changes . . . to interfere improperly . . . ." Black's Law Dictionary 1627 (4th ed. 1968). Similarly, Webster's Third New International Dictionary of the English Language 2336 (Unabridged 1969) defines tamper as "to alter for an improper purpose or in an improper way."[6] The American Heritage Dictionary of the English Language 1314 (1969) lists several meanings of tamper, including:

1. To interfere in a harmful manner. . . . 3. To bring about an improper situation or condition by clandestine means. . . . 4. To alter improperly . . . .

All of these definitions indicate that the word tamper as used in this regulation connotes wrongful or harmful interference with a motor vehicle, plus physical touching or damaging of the vehicle, and an improper purpose or intent.[7]

The construction of the tampering regulation at issue here was discussed extensively in *District of Columbia v. Gary,*

Crim. No. 16739–67 (D.C.Super.Ct., Oct.10, 1968). The trial court there concluded that the statute was not vague and that defendant Gary's conduct fell within the terms of the regulation. In reaching its conclusion, the court presented a lengthy analysis of statutes, and cases construing those statutes, from other jurisdictions including California, Texas, and Missouri.[8] Each state statute was relevant in helping the court interpret the District of Columbia regulation to mean "to open or alter a vehicle or any of its contents with an unlawful purpose, or to attempt to do the same." *District of Columbia v. Gary, supra* at 10. The court added that this definition:

[W]ould exclude from its coverage the Good Samaritan who is caught turning off the lights of another, because he does not possess an unlawful purpose in acting. It would, however, include those individuals apprehended for prying open or picking a vehicle's lock. This activity has resulted in a change in the auto from a locked to an unlocked condition, thereby constituting a physical alteration. It would also include those individuals caught while attempting to pick the lock of an automobile. Their activity is considered an attempted alteration with an unlawful purpose and therefore violative of this Regulation.

We concur in this statement.[9]

---

6. Appellant has misread this definition of the transitive verb "tamper". The definition is not preceded by "archaic," nor are "plot" and "scheme" listed as synonyms. These attributes are listed only for the third definition of the intransitive verb "tamper."

7. We do not construe the regulation as requiring proof of some specific intent not included in the text, but rather conclude that the word tamper itself is pejorative and connotes conduct done with a wrongful goal or purpose in mind.

8. The cases included *People v. Score,* 48 Cal. App.2d 495, 120 P.2d 62 (1941) ; *State v. McLarty,* 414 S.W.2d 315 (Mo.1967) ; *State*

*v. Ridinger,* 364 Mo. 684, 266 S.W.2d 626 (1954) ; *State v. Ryan,* 289 S.W. 13 (Mo. App.1926) ; *Moore v. Texas,* 153 Tex.Cr.R. 473, 221 S.W.2d 284 (1949) ; *Waggoner v. Texas,* 135 Tex.Cr.R. 446, 120 S.W.2d 1062 (1938). *See also* Annot., 57 A.L.R.3d 606 (1974).

9. The construction we give the regulation identifies authoritatively the conduct forbidden and provides a "narrowing interpretation" against which to determine the claim of vagueness. *See Wainwright v. Stone,* 414 U.S. 21, 23, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973) ; *Riley v. United States,* D.C.App., 298 A.2d 228, 231 (1972).

■ For the above reasons, we hold that D.C. Police Regulation Art. 25, § 15 is not vague since the language and history of the regulation provide potential defendants with adequate notice and standards concerning what conduct is proscribed.[10] Consequently, the regulation proscribes a "comprehensible course of conduct" and may be applied to the facts of the case at hand. *United States v. Powell, supra.*

■ We conclude that there was ample evidence presented at the fact-finding hearing for the trial court to find appellant in violation of the regulation. Appellant was seen inside the automobile looking under the dashboard, the lock on the driver's door had been broken, wires under the dashboard had been ripped out, the ignition was destroyed, and appellant was apprehended after leaving the car as smoke was forming in the front seat under the dashboard. The circumstances clearly presented a sufficient basis for the trial court to conclude that appellant had been tampering with a parked vehicle without the permission of the owner.

For the foregoing reasons, the judgment is

*Affirmed.*

10. One statute found by this court to be unconstitutionally vague was D.C.Code 1973, § 22–1112(a), prohibiting any "lewd, obscene or indecent act." *District of Columbia v. Walters,* D.C.App., 319 A.2d 332 (1974). We held that the statute there was invalid because it failed both parts of the vagueness test: it did not provide clear notice of forbidden conduct, and it granted too much discretion to the police to determine who had violated the law. As we explained (at 355):

Opposing segments of the public may well agree as to the lewdness, obscenity or indecency of many acts . . . but they will disagree about many other acts without approaching absurdity. Thus, there is a broad gray area in which the words of the statute will convey substantially different standards to different people. An act that is obscene to one person may be quite innocent to another—and by proscribing "any other lewd, obscene, or indecent act" the statute is so encyclopedic in its reach that the areas of reasonable disagreement are limitless.

In contrast, the tampering statute involved here does not create a gray area of conduct which an individual must enter only at his peril.