**Clinton R. SIMMS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 90-CO-1587.**

District of Columbia Court of Appeals.

Argued June 11, 1992.

Decided July 10, 1992.

Philip Clarke Baten, Washington, D.C., for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Following a bench trial before Hearing Commissioner John W. King, appellant was found guilty of tampering with a vehicle in violation of 18 DCMR § 1105.2(a) (1986), and sentenced under 18 DCMR § 1110.1 to a $160.00 fine and ten days imprisonment; the sentence was suspended and appellant was placed on six months probation.[1] The trial judge affirmed the commissioner's decision.[2] Appellant now contends that the hearing commissioner erroneously refused

---

**1.** *See* D.C.Code § 11–1732(j)(5) (1989 Repl.).

**2.** *See* D.C.Code § 11–1732(k).

to consider appellant's defenses of abandonment and mistake of fact.[3] We affirm.

## I

At approximately 7:30 p.m. on May 3, 1990, Captain Joseph Amady of the Metropolitan Police Department observed a group of people attempting to raise a parked Volkswagen Jetta automobile onto the crane of a tow truck. Appellant was standing near a jack and he was placing boards underneath the car. Captain Amady also testified that the police department previously had recovered numerous stolen cars in the same location and that the Jetta being towed did not appear to have been there long. After a computerized check identified the Jetta as a stolen vehicle,[4] Captain Amady charged appellant with tampering with a vehicle.

Linda Hancock, who was present at the time of appellant's arrest, testified that after she had told appellant that she needed a grill and fender for her own Jetta, he escorted her to the stolen Jetta. According to her, before the police arrived appellant examined the stolen Jetta's fender and said, "It might work." He then placed a tire on the Jetta so the tow truck could move it. Ms. Hancock described the car as "an abandoned Jetta in the bushes."

Shawn Clayton, a defense witness, testified that the Jetta looked abandoned to him, since he had seen it a couple of times over the period of a month. He also testified that he overheard appellant talking to someone named Darryl about a request for Jetta parts; appellant told Darryl that he

had seen the Jetta in Brandywine Alley, that the "windows are busted out of it. . . . [and] [i]t looked like it's brand new," and that he did not know if it was stolen or not.

Appellant also testified about his conversation with Darryl, and that when Linda Hancock asked if he could acquire parts for her Jetta, he told her that he had noticed "a Jetta abandoned" in the same place for "approximately three weeks to a month, [and that] the windows are all busted out and the car is totally destroyed." He had told her that "I don't know if it's been stolen or abandoned, as far as I know it's abandoned. No wheels on it an[d] all that. It's in bad condition." She responded that she would get a tow truck driver, and less than two hours later she returned with a tow truck, and her two brothers had tried to get the Jetta hooked up to the tow truck to pull the Jetta out of the bushes. On cross-examination, when asked if he had said he did not know if the Jetta was stolen or abandoned, appellant explained that he knew the Jetta did not belong to him and that he had seen the Jetta five or six times over the three-weeks-to-a-month period.[5]

The government, in rebuttal, called Officer Simmons who testified that he believed that the Jetta might have had a current (1991) Maryland tag on its rear, and that it "was basically pretty much stripped" at the time of appellant's arrest.

In finding appellant guilty, the hearing commissioner rejected appellant's claim of lack of jurisdiction, see note 3, supra, and also his defense that he believed the Jetta had been abandoned by its owner. The

---

**3.** In his brief appellant also contends, as he did below, that the hearing commissioner lacked jurisdiction to impose the ten day prison sentence because the regulation was unlawfully promulgated. At oral argument, however, appellant's counsel advised that he was persuaded by the government's position that the Council of the District of Columbia adopted the current prohibition against tampering, codified at 18 DCMR § 1105.2, and that its predecessor, the District of Columbia Council, adopted the criminal sanctions, codified at 18 DCMR § 1110.1(a), so that each legislative body was acting within its authority. See D.C.Law 4–146, amending 18 DCMR § 1105.1, and as amended codified at 18 DCMR § 1105.2, which is almost identical to D.C.Code § 40–812(d) (1990 Repl.); Regulation

No. 73–15, 20 D.C.Reg. 8 (1972–73); D.C.Code § 1–213 (1987); see also District of Columbia v. Smith, 329 A.2d 128 (D.C.1974), 1 D.C.Code § 130 (1991); District of Columbia Police Regulations, Art. 25 § 15, Art. 30 § 4 (1970). Accordingly, we need not address this issue in further detail.

**4.** Ms. Evelyn Stewart testified that her 1988 Jetta had been stolen in April 1990. When she recovered the car, the tires, radio, and seats had been removed.

**5.** Appellant was impeached with a prior conviction for armed robbery with a knife in 1984, when he was 17 years old.

hearing commissioner ruled that, in general, abandonment had to be proved by unequivocal, clear and decisive evidence but that since appellant was not a member of any statutory class permitted under 18 DCMR § 1105.2 to touch a vehicle (*i.e.*, the vehicle's owner, the vehicle owner's representative or a government official), abandonment in the nature of a mistake of fact was not a defense. Alternatively, the commissioner ruled that "under either the Government's theory or even the Defense theory, [appellant,] based on the evidence and the facts that I have found beyond a reasonable doubt[,] must be found guilty." Appellant raised the jurisdictional and abandonment claims in a Super.Ct.Crim.R. 117(g) motion before the trial judge, who affirmed the decision of the hearing commissioner without opinion upon entering the judgment and commitment order.

## II

Appellant contends that the hearing commissioner erroneously rejected his defense of mistake of fact based on the evidence that appellant thought the stolen Jetta had been abandoned by its owner. He maintains that although the hearing commissioner recognized that tampering under 18 DCMR § 1105.2 was a general intent crime, the commissioner concluded that the offense was one of strict liability.

■ The prohibition against tampering does not ban all forms of contact with a vehicle by individuals not within one of the statutorily exempted groups. *See In re R.F.H.*, 354 A.2d 844 (D.C.1976). This court has construed the word "tampering" as limiting the regulation's applicability to those who physically contact another's vehicle with "an improper purpose or intent." *Id.* at 847 (concluding that the regulatory prohibition against tampering with a vehicle was not unconstitutionally vague) (footnote omitted). The court distinguished lawful and unlawful contact as follows:

[The definition of tampering] exclude[s] from its coverage the Good Samaritan who is caught turning off the lights of another, because he does not possess an unlawful purpose in acting. It would, however, include those individuals apprehended for prying open or picking a vehicle's lock.... It would also include those individuals caught while attempting to pick the lock of an automobile.

*Id.* at 847 (quoting *District of Columbia v. Gary*, No. 16739–67 (D.C.Super.Ct. October 10, 1968)).

■ Appellant's defense that he believed the Jetta was abandoned is essentially a defense of mistake of fact.[6] *Williams v. United States*, 337 A.2d 772, 774 (D.C. 1975). In general intent crimes, such as tampering with another's vehicle, *see R.F.H., supra*, 354 A.2d at 847 n. 7, a defendant may interpose a mistake of fact defense if the defendant proves "to the satisfaction of the fact finder that the mistake was both (1) honest and (2) reasonable." *Williams, supra*, 337 A.2d at 774–75; *see also Morgan v. District of Columbia*, 476 A.2d 1128, 1132 (D.C.1984) (proof of general intent requires absence of exculpatory state of mind such as mistake of fact). Thus, appellant's mistake of fact defense is a proper defense to tampering with an automobile because it can negate appellant's general intent to commit the crime, thereby demonstrating that appellant did not physically make contact with the stolen Jetta with an "unlawful purpose." *R.F.H., supra*, 354 A.2d at 847 (citation omitted); *see also Williams, supra*, 337 A.2d at 774–75.

However, where the mistake of fact is based on a claim that the defendant mistakenly believed property had been abandoned by its owner, the court has also stated that:

An abandonment must be made to appear affirmatively by the party relying on it, and an intention to abandon will

---

6. Although appellant contends that the hearing commissioner rejected two defenses—abandonment and mistake of fact, these are one and the same defense in the instant case. Appellant never raised a mistake of fact defense that was separate and distinct from his abandonment defense. Furthermore, the hearing commissioner never addressed a second mistake of fact defense, but instead, characterized the abandonment defense as being in the nature of a mistake of fact defense.

not ordinarily be presumed, and this is particularly true if the conduct of the owner can be explained consistently with a continued claim. Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence.

*Peyton v. United States*, 275 A.2d 229, 230 (D.C.1971) (quoting *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir.), *cert. denied*, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965)); *Williams, supra*, 337 A.2d at 774. The precise relationship between the requirement that an abandonment must be shown by clear, unequivocal and decisive evidence, and the requirement that a defendant demonstrate that his belief that property was abandoned was honest and reasonable, is not immediately clear. *Peyton*'s quotation of *Friedman*'s language might suggest that the focus should be on whether the lawful owner intended to abandon the property, and that a mistake of fact defense resting on a belief that the property was abandoned is somehow different from other mistake of fact defenses, requiring the defendant to satisfy a more burdensome standard of proof by clear, unequivocal and decisive evidence. But that is not, and indeed, could not be, the case. *See Mullaney v. Wilbur*, 421 U.S. 684, 702, 95 S.Ct. 1881, 1891, 44 L.Ed.2d 508 (1975) (fact that intent is "peculiarly within the knowledge of the defendant" does not justify shifting burden to defendant); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (Due Process Clause places burden on government to prove every element of a crime beyond a reasonable doubt).[7] In *Friedman, supra*, on which this court relied in *Peyton*, the issue was merely whether the trial court had correctly found that the defendant had abandoned certain property and so could not claim Fourth Amend-

ment protection against its seizure, 347 F.2d at 704–06; no issue was presented regarding the government's obligation to prove guilt beyond a reasonable doubt. Further, we think that when the court in *Peyton, supra*, 275 A.2d at 230, referred to the clear and unequivocal evidence standard it was simply explaining why the defendant in that case had not presented evidence of abandonment—*i.e.*, that property on the sidewalk outside of a drug store was abandoned—sufficient to create a reasonable doubt in the jury's mind. *See id.* ("the jurors were properly instructed on intent and chose to believe that defendant intended to steal the carton of matches"). The court did not purport to foreclose a jury instruction on mistake of fact based upon abandonment. *Id.* Indeed, in *Goddard v. United States*, 557 A.2d 1315, 1317 (D.C. 1989), the court expressly stated that a defendant raising a mistake of fact defense based on an actual and reasonable belief of abandonment "is entitled to a jury instruction on any issue fairly raised by the evidence, however weak, ... so long as a reasonable juror acting reasonably could credit the evidence." (citations and internal quotations omitted).[8]

A mistake of fact defense based on a defendant's belief that property was abandoned by its owner necessarily turns on the defendant's reasonable belief and not on the lawful owner's actual intention to abandon his or her property.[9] *See* W. LaFave & A. Scott, Substantive Criminal Law ch. 5 § 5.1(b), at 581 ("the general principle [is] that ignorance or mistake of fact or law is a defense only if it negates a required mental state [of defendant]"). Therefore, as with any other mistake of fact defense to a general intent crime, the defense of abandonment rests on whether the defendant's belief was honest and reasonable, *see Williams, supra*, 337 A.2d at

7. We have no occasion here to consider whether the legislature may impose on a defendant the burden of proving defenses such as abandonment and mistake of fact generally. *See Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (extreme emotional disturbance defense to second degree murder); *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (self defense to aggravated murder).

8. As the court noted in *Goddard, supra*, 557 A.2d at 1317, no instruction was requested in *Peyton* on a defense based on actual and reasonable belief of abandonment.

9. Objective evidence available to the defendant suggesting that the property had been abandoned would, of course, offer further support for the reasonableness of defendant's belief.

220 ■

774–75, and is not a special kind of mistake of fact defense placing a heavier burden on the defendant.

■ The question remains whether the hearing commissioner's ruling that appellant could not interpose a mistake of fact defense was harmless error.[10] *See Carter v. United States*, 531 A.2d 956, 959 (D.C. 1987); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The commissioner did not state that appellant's only burden was to show that his mistake was both honest and reasonable. Rather, the commissioner focused initially on the fact that appellant would not have been entitled to a jury instruction because he did not fall within one of the three statutory classes of people entitled to touch a vehicle. Therefore, the commissioner concluded that no such defense was available to appellant. However, thereafter the commissioner made an alternative ruling, that even under the defense theory the evidence established beyond a reasonable doubt that appellant was guilty. The only theory presented by the defense, other than a jurisdictional claim that the commissioner had earlier rejected, *see* note 3, *supra*, was that appellant had thought that the Jetta was abandoned.

■ The factual findings underlying the commissioner's ruling are supported by the evidence and are not clearly erroneous. D.C.Code § 17–305 (Repl.1989). The findings relevant to the mistake of fact defense were that, according to appellant and Mr. Clayton, the Jetta had been in the alley for about a month and did not have any windows or wheels and looked like it needed parts. Further, appellant had stated that he did not know whether the car was abandoned or stolen. The transcript makes clear that appellant did not testify that he believed the car was abandoned by its owner. Rather, just prior to the tampering incident, he admitted to others that he did not know whether the car had been abandoned or stolen. The commissioner could reasonably infer that appellant's admission reflected that he knew there was an alternative explanation for the vehicle's condition that was consistent with a continuous claim of ownership by the Jetta's owner. The fact that the Jetta had been stripped of its tires and radio and had its windshield broken, muchless its location in the bushes, did not require the commissioner to credit appellant's defense.[11] Abandonment cannot be presumed merely because of the location and condition of the car since those circumstances "[could] be explained consistently with a continued claim" by the owner. *Peyton, supra*, 275 A.2d at 230. The Jetta was only about two years old, and had a current registration tag on the rear. Appellant never disputed that the car had a current license plate on it. The Jetta also was in an area where numerous stolen vehicles had previously been recovered by the police, although, admittedly, there was no showing that appellant had reason to be aware of this fact. However, there also was no testimony of any structural damage to the body of the car that would suggest that the Jetta's damage resulted from an automobile accident. Thus, there was sufficient evidence for the commissioner to find that appellant realized that the car might not be abandoned.

Accordingly, we affirm the judgment.

<hr/>

10. The issue of the availability of a mistake of fact defense was raised before the hearing commissioner and again before the trial judge in appellant's Super.Ct.Crim.R. 117(f) memorandum.

11. As noted by the court in *Kearns v. McNeill Bros. Moving & Storage Co.*, 509 A.2d 1132 (D.C. 1986):

Abandoned property is that to which *the owner* has voluntarily relinquished all right, title, claim, and possession, with the intention of terminating his [or her] ownership, but without vesting it in any other person and with the intention of not reclaiming future possession or resuming its ownership, possession, or enjoyment.

*Id.* at 1136 (quoting 1 Am.Jur.2d *Abandoned, Lost, and Unclaimed Property* § 1, at 3–4 (1962) (footnote omitted)) (emphasis added). A thief does not acquire ownership interest in the goods he or she steals, *see Schrier v. Home Indemnity Co.*, 273 A.2d 248 (D.C.1971); D.C.Code § 28:2–401(1), and thus cannot abandon them in the legal sense of the word. *See Kearns v. McNeill Bros. Moving & Storage Co., supra* note 11, 509 A.2d at 1132.